# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO FLORES; JUANA FLORES; GIOVANNI FLORES, a minor, by and through his Guardian Ad Litem; and ABIGAIL FLORES, a minor, by and through her Guardian Ad Litem,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVEN SHEPHARD; CITY OF NATIONAL CITY, a municipality,<br><br>Defendants. | CASE NO. 04cv2337-IEG(NLS)<br><br>Order Denying Plaintiff's Motion for Attorneys Fees and Costs<br>[Doc. No. 228] |

Plaintiff Antonio Flores moves the Court pursuant to 42 U.S.C. § 1988 for an award of reasonable attorneys fees, in the net amount of $57,546.25, and reimbursement of expert witness fees, in the amount of $13,479.50. Defendant has filed an opposition and Plaintiff has filed a reply. The Court previously found the motion appropriate for submission on the papers and without oral argument, and the January 12, 2009 hearing was vacated. For the reasons set forth herein, Plaintiff's motion is DENIED.

### *Background*

Plaintiff Antonio Flores, his wife Juana Flores, and their two young children Giovanni Flores and Abigail Flores, brought this action under 42 U.S.C. § 1983 alleging violation of their civil rights by Defendants Steven Shephard, the City of National City, J.C. Penney Corporation,

Inc., and J.C. Penney Manager John Sanchez.  Plaintiffs also alleged state law causes of action against all Defendants.

Plaintiffs' allegations stemmed from a November 14, 2003 incident at the J.C. Penney store in the Plaza Bonita shopping center in National City.  In the afternoon of November 14, 2003, Plaintiffs went to the J.C. Penney store to return a pair of pants which Antonio Flores had purchased earlier that day.  Antonio Flores went to customer service to return the pants while the rest of his family shopped.  After Antonio Flores completed the return, he and his cousin Alejandro Galeana browsed through the store.

National City police officer Steven Shephard was also at J.C. Penney store the afternoon of November 14, 2003, investigating a shoplifting incident reported by store employees earlier in the day.[1]  At some point, J.C. Penney employees identified Antonio Flores and Alejandro Galeana and told Officer Shephard that Antonio and Alejandro were in the store earlier in the day when the shoplifting incident occurred.

Officer Shephard approached Antonio Flores and his cousin and asked for identification.  Antonio Flores presented a California driver's license while his cousin provided a Matricula Consular card.  After initially speaking with the two men, Officer Shephard asked if they were with anyone else at the store that day.  Antonio Flores responded they were shopping there with their family, and Officer Shephard asked to speak with his other family members.

Antonio Flores took Officer Shephard to another part of the store where his wife and his aunt, Marfelix Arceta, were shopping.  Officer Shephard asked both women for identification.  Juana Flores presented a Matricula Consular card, but Marfelix Arceta had no identification with her.  Officer Shepard had the entire Flores family leave the store and follow him to his patrol car, where he called Border Patrol.

When Border Patrol officials arrived shortly thereafter, they took Alejandro Galeana and Marfelix Arceta into custody because they could not provide evidence of their legal status within the United States.  Both were deported to Mexico later that day.  Antonio Flores and his wife and

---

[1] The J.C. Penney store had recently experienced a series of "grab and run" thefts, where a group of individuals would enter the store together, grab merchandise near an exit, and then run out of the store into a waiting vehicle.

1  children were permitted to leave.

2  Plaintiffs[2] filed a complaint in San Diego County Superior Court on November 9, 2004, alleging causes of action under both 42 U.S.C. § 1983 and California's civil rights law, Cal. Civ. Code § 52.1 and 51.5. Plaintiffs also alleged causes of action for false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence. [Doc. No. 1.]

On March 16, 2006, the Court granted in part and denied in part Defendants' motions for summary judgment. The Court dismissed Plaintiffs' claims under 42 U.S.C. § 1983 against the City of National City; dismissed Plaintiffs' claims against J.C. Penney and John Sanchez under Cal. Civ. Code § 52.1; and dismissed Plaintiffs' state law claims against J.C. Penney and John Sanchez for false imprisonment, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress. The Court denied summary judgment on all remaining claims. [Doc. No. 108.]

Defendants National City and Steven Shephard appealed the Court's denial of its summary judgment motion based upon qualified immunity, and the remainder of this case was stayed pending that appeal. The Court of Appeals affirmed and the case returned to this Court for trial.

Prior to trial, Plaintiffs entered into a settlement agreement with J.C. Penney and John Sanchez. Under the settlement agreement, J.C. Penney paid Plaintiffs the total amount of $35,000. The Court entered an order approving the settlement and determining such settlement was in good faith pursuant to Cal. Code Civ. Proc. § 877.6. [Doc. No. 201.]

Plaintiffs proceeded to trial on their claims against National City and Officer Shephard. Prior to the start of trial, Plaintiffs withdrew their state law claims for intentional and negligent infliction of emotional distress. [Doc. No. 204.] During trial, the Court granted Defendant National City's motion for judgment under Fed. R. Civ. P. 50 as to Plaintiffs' claims under Cal. Civ. Code § 52.1. [Doc. No. 208.] Plaintiffs also withdrew their claim for false imprisonment before the case went to the jury. [Doc. No. 209.] As a result, the only claim presented to the jury

---

[2] Alejandro Galeana and Marfelix Arceta were Plaintiffs initially, but voluntarily dismissed their claims on July 6, 2005.

was Plaintiffs' claim under 42 U.S.C. § 1983 that Officer Steve Shephard unreasonably detained them in violation of their Constitutional right.

The jury returned a special verdict form finding Officer Steve Shephard did not unreasonably detain Plaintiffs Juana, Giovanni, or Abigail Flores. However, the jury determined Officer Shephard did unreasonably detain plaintiff Antonio Flores in violation of his Constitutional right. [Doc. No. 214.] The jury determined the detention was not a substantial factor in causing any harm to Antonio Flores, and therefore awarded zero damages.

Following a post-trial motion, the Court entered judgment in favor of Plaintiff Antonio Flores and against Defendant Steven Shephard in the amount of $1.00 for nominal damages based upon the jury's finding that Officer Shephard violated Antonio Flores' constitutional rights. [Doc. No. 222 and 223[3].] Plaintiff then filed this motion for attorneys fees pursuant to 42 U.S.C. § 1988.

## *Discussion*

Plaintiff seeks an award of reasonable attorneys fees pursuant to 42 U.S.C. § 1988 as the prevailing party in this litigation. Calculated at a reduced hourly rate of $185 per hour (to reflect the verdict was symbolic and not for any actual damages) for a total of 500.25 hours of attorney time, Plaintiff's total attorneys fees are $92,546.25. Reducing that total by the $35,000 settlement with J.C. Penney for which Defendants are entitled to an offset, Plaintiff by this motion seeks an award of $57,546.25 in fees. In addition, Plaintiffs seeks reimbursement of expert witness fees of $1,400 paid to defense expert Robert Fonzi for his deposition testimony, and $12,079.50 paid to Plaintiff's expert Ron Martinelli for his work on this case. Defendant opposes the motion, arguing Plaintiff's success was purely technical. Under Farrar v. Hobby, 506 U.S. 103 (1992), Defendant argues the Court should decline to award fees.

Pursuant to 42 U.S.C. § 1988(b), in an action for enforcement of civil rights, the court may award the prevailing party his reasonable attorney's fee. Although the statute provides the court with discretion to deny an award of fees, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Hensley v.

---

[3]The Court entered an amended judgment on January 6, 2009, clarifying Plaintiff Antonio Flores prevailed on his claim *only* as to Officer Steven Shephard, and that Plaintiff's claim against National City had been dismissed by the Court prior to trial. [Doc. Nos. 241 and 242.]

1 Eckerhart, 461 U.S. 424, 429 (1983).  One circumstances which may render an award of fees
2 unjust is where the plaintiff's victory is purely "technical" in nature.  Farrar, 506 U.S. at 115;
3 Mendez v. County of San Bernardino, 540 F.3d 1109, 1126 (9th Cir. 2008).  Although an award of
4 nominal damages renders a plaintiff a "prevailing party", "[w]hen a plaintiff recovers only nominal
5 damages because of his failure to prove an essential element of his claim for monetary relief, the
6 only reasonable fee is usually no fee at all."  Farrar, 506 U.S. at 115.  Where a civil rights plaintiff
7 obtains only nominal damages, before the court engages in any determination of an appropriate fee
8 under the "lodestar method," the court must first determine whether plaintiff is entitled to any fee
9 at all.  Benton v. Oregon Student Assistance Commission, 421 F.3d 901, 905 (9th Cir. 2005).

10 In order for a nominal damages plaintiff to obtain an award of attorneys fees in the Ninth
11 Circuit, he "must point to some way in which the litigation succeeded, *in addition* to obtaining a
12 judgment for nominal damage."  Benton, 421 F.3d at 905 (quoting Wilcox v. City of Reno, 42 F.3d
13 550, 555 (9th Cir. 1994)) (emphasis in original).  For example, a nominal damages plaintiff will be
14 entitled to an award of fees if he can show the lawsuit achieved other tangible results, "such as
15 sparking a change in policy or establishing a finding of fact with potential collateral estoppel
16 effects."  Id.  Other factors supporting an award of fees to a plaintiff who obtains nominal damages
17 include "'the significance of the legal issue on which the plaintiff claims to have prevailed' and
18 whether the success 'accomplished some public goal . . . .'" Id. (quoting Farrar, 506 U.S. at 121).

19 In his motion, Plaintiff argues he is entitled to fees because not only did the jury find in his
20 favor that he was unreasonably detained in violation of his Constitutional rights, but the
21 circumstances surrounding this case also resulted in a change in National City Police Department
22 policies and procedures relating to the use of Matricula Consular cards for identification.
23 Furthermore, Plaintiff argues an award of fees is appropriate because the underlying incident was a
24 matter of wide spread public concern and impact.  The Court disagrees.

25 First, the Court finds Plaintiff has failed to demonstrate that *this lawsuit* sparked any
26 change in policy by the National City Police Department relative to the Constitutional deprivations
27 alleged in the Complaint.  The "change in policy" upon which Plaintiff relies to argue he is entitled
28

to attorneys fees occurred prior to the filing of this case, on May 12, 2004.[4] Plaintiff asserts "there is circumstantial evidence adequate to support a reasonable inference that this matter resulted in a change" in the City's policy. The Police Department changed its policy regarding use of Matricula Consular cards for identification on May 12, 2004, after Plaintiffs filed their claim with the City but before they filed this lawsuit. Even assuming the change in Police Department Policy was the result of the underlying incident and subsequent publicity, it does not follow that the change was sparked by *this lawsuit*.

Furthermore, the use of Matricula Consular cards for identification was a marginal issue in this case, upon which Plaintiff did not prevail in any way. Plaintiffs in their complaint alleged that defendants detained them in violation of their civil rights based upon racial profiling and the lack of reasonable suspicion. The complaint also alleged Juana Flores presented Officer Shephard with a Matricula Consular card for identification on the day of the incident. Aside from these allegations, the issue of use of Matricula Consular cards for identification was not central to Plaintiffs' claims. The Complaint did not allege the City's prior policy with regard to use of Matricula Consular cards was unconstitutional or seek a declaration to that effect. Plaintiff obtained no relief in this action related to the Police Department's use of Matricula Consular cards for identification. In addition. the Court granted summary judgment in favor of National City on Plaintiffs' claims regarding the City's policies and procedures in effect at the time of the incident. [Doc. No. 108, pp. 10-11.] Finally, the jury found in favor of Antonio Flores as against Defendant Steven Shephard only. Thus, it cannot be said this lawsuit sparked a change in policy by the City which will be of any general public benefit.

Plaintiff argues the underlying incident generated wide public interest and concern, and provides copies of several news articles from November of 2003 through April of 2004. The Court does not dispute there were significant legal issues involved in this case. Plaintiffs alleged

---

[4] Although Plaintiff argues the incident resulted in a change to the City's policy regarding use of Matricula Consular cards for identification, the only portion of the 2004 revised policy to which Plaintiff refers is the initial statement of purpose. Plaintiff does not explain how the revised policy would have changed the outcome of the incident on November 14, 2003, or how the change in the policy benefitted the public at large.

they were detained without reasonable suspicion as a result of racial profiling.[5] Ultimately, however, the jury found Defendant Shephard did not unreasonably detain three of the four Plaintiffs. Even the jury's verdict with regard to Antonio Flores is ambiguous. There is no way to determine what conduct the jury found violated Antonio Flores' Constitutional rights. Plaintiff obtained no declaratory or injunctive relief to the benefit of the general public.

The facts of this case are similar to those in <u>Benton</u>, in which the Ninth Circuit held the district court abused its discretion in awarding attorneys fees. In <u>Benton</u>, the plaintiff was a professor at a community college in Oregon. Plaintiff received her degree from an unaccredited institution emphasizing conservative values, Bob Jones University. Plaintiff brought suit under 42 U.S.C. § 1983 alleging the defendants tried to fire Plaintiff from her job because she obtained a degree considered "illegal" under Oregon law. Plaintiff initially sought injunctive and declaratory relief alleging the state law was unconstitutional as it impinged upon her rights to free speech, free exercise of religion, due process, and equal protection. After the state statute was amended to allow an exception, the court dismissed as moot her claim for injunctive and declaratory relief. Plaintiff then amended her complaint to add a claim for compensatory damages for alleged past unconstitutional acts.

After a bench trial, the court found one of the defendants enforced the state regulation against plaintiff not for the regulation's intended purpose, to protect against unqualified instructors, but instead because of a bias against the institution from which she received her degree. The court awarded plaintiff nominal damages of one dollar. Plaintiff sought attorney's fees of $857,278 and costs in the amount of $104,213.05. The trial court instead awarded plaintiff $371,362 in attorney's fees and $70,828.84 in costs.

The Ninth Circuit reversed, finding the district court abused its discretion by awarding plaintiff her attorney's fees based upon the award of nominal damages. After reviewing the standards for award of fees in such cases, the Court concluded plaintiff did not achieve "other tangible results" justifying the award of fees and costs. First, the Court of Appeals rejected the

---

[5]In addition, the original complaint involved allegations regarding the proper role of local policed departments in enforcing federal immigration laws. Alejandro Galeana and Marfelix Arceta, however, voluntarily dismissed their claims early in the case.

trial court's determination that the public at large would benefit from plaintiff's success, noting there was nothing to suggest the court's finding "will in any way guide" defendant's future conduct. Benson, 421 F.3d at 907-08.  Second, the appellate court rejected the trial court's determination that the judgment benefitted plaintiff personally by giving her something "to point to in support of the trustworthiness of her education and her credentials." Id. at 908.  The appellate court noted the trial court dismissed plaintiff's claims for injunctive and declaratory relief, such that plaintiff's only success was the finding there was a constitutional violation and the corresponding nominal damages award. "[T]he finding that plaintiff's rights were violated and the accompanying judgment cannot be the 'something more' required for an award of attorney's fees and costs here." Id.

Here, the only "tangible result" of this litigation is the jury's finding that Defendant Shephard unreasonably detained Plaintiff Antonio Flores in violation of his Constitutional rights and the corresponding subsequent award of nominal damages by the Court.  Plaintiff obtained no additional tangible relief.  This lawsuit resulted in no determination that any policy was unconstitutional, resulted in no change in policy, and will not result in any benefit to the public at large.  As a result, the Court DENIES Plaintiff's motion for attorney's fees and expert witness fees.

### *Conclusion*

For the reasons set forth herein, the Court DENIES Plaintiff's motion for attorney's fees and expert witness fees [Doc. No. 228.]

**IT IS SO ORDERED**.

**DATED: January 21, 2009**

_____
**IRMA E. GONZALEZ, Chief Judge
United States District Court**